# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | |
|---|---|
| NICHOLAS GILMAN, Individually<br>322 4TH Street, SE<br>Washington, DC 20003 | *<br>*  |
| and | * |
| DEBORAH GILMAN, Individually<br>322 4TH Street, SE<br>Washington, DC 20003 | *<br>* |
| *Plaintiffs* | * |
| v. | * |
| GEOFFREY COLBY, M.D.<br>UCLA Neurosurgery<br>300 Stein Plaza, Wasserman Bldg., Suite 420<br>Los Angeles, CA 90095 | *   Case No: _____<br>*<br>* |
| and | * |
| JUSTIN MICHAEL CAPLAN, M.D.<br>The Johns Hopkins Hospital<br>1800 Orleans Street<br>Baltimore, MD 21287 | *<br>* |
| and | * |
| THE JOHNS HOPKINS HOSPITAL, INC<br>600 N. Wolfe Street<br>Baltimore, Maryland 21287 | *<br>* |
| **Serve on**:   Owner<br>Legal Department<br>600 N. Wolfe Street<br>Administration 400<br>Baltimore, Maryland 21287 | *<br>*<br>* |
| and | * |
| THE JOHNS HOPKINS HOSPITAL<br>600 N. Wolfe Street<br>Baltimore, Maryland 21287 | *<br>* |

1

| | | |
|---|---|---|
| **Serve on:** | Resident Agent | * |
| | G. Daniel Shealer, Jr. | |
| | 733 N. Broadway | * |
| | Suite 102 | |
| | Baltimore, MD 21205 | * |

*Defendants*                                          *

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## COMPLAINT AND ELECTION FOR JURY TRIAL

Plaintiffs, Nicholas Gilman, Individually, and Deborah Gilman, Individually, by and through their attorneys, Julia R. Arfaa, Esquire, Jonathan A. Cusson, Esquire, and Julia Arfaa, P.A. d/b/a ARFAA Law Group, hereby sue the Defendants, Geoffrey Colby, M.D., Justin Caplan, M.D., and the Johns Hopkins Hospital d/b/a Johns Hopkins Hospital, and for reasons state as follow:

### COUNT I

1. The amount of this claim exceeds $30,000.00.

2. The venue for this claim is proper in the United States District Court for the District of Maryland Northern District.

3. At all relevant times, the Defendant, Geoffrey Colby, M.D., held himself out to the Plaintiffs and to the general public as an experienced, competent, and able neurosurgeon, possessing or providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of neurosurgery, and, as such, owed a duty to the Plaintiffs to render that degree of care and treatment which is ordinarily rendered by those who devote special study and attention to the practice of neurosurgery and preoperative embolization procedures for meningioma.

2

4. At all relevant times, the Defendant, Justin Caplan, M.D., held himself out to the Plaintiffs and to the general public as an experienced, competent, and able neurosurgeon, possessing or providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of neurosurgery, and, as such, owed a duty to the Plaintiffs to render that degree of care and treatment which is ordinarily rendered by those who devote special study and attention to the practice of neurosurgery and preoperative embolization procedures for meningioma.

5. At all relevant times, the Defendant, the Johns Hopkins Hospital d/b/a Johns Hopkins Hospital ("JHH") was and is a medical facility offering administrative, medical, surgical, neurosurgical, physical therapy, nursing, radiological, consultative, and other related services to the general public and in such capacity, such institution, its agents, servants and/or employees, administrators, medical staff, surgeons, neurosurgeons, physical therapists, nurses, radiological, and consultants held themselves out as practicing ordinary standards of administrative, medical, surgical, neurosurgical, physical therapy, nursing, radiological, and consultative care and, as such, owed a duty to the Plaintiffs to render and provide health care within the ordinary standards of administrative, medical, surgical, neurosurgical, physical therapy, nursing, radiological and consultative care, and to exercise reasonable skill and care in the selection of its personnel to provide competent administrators, physicians, surgeons, neurosurgeons, physical therapists, nurses, radiologists, and consultants, and other administrative and medical personnel, possessing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine, surgery, neurosurgery, physical therapy, nursing, radiological and consultative care, and to supervise and provide its patients with diagnostic, medical, surgical, rehabilitative, administrative and consultative services and treatment

3

commensurate with the condition from which the patient suffers and for which patient entered said institution.

6. At all times hereinafter set forth, all nurses, medical doctors, physicians' assistants, doctors of osteopathic medicine, surgeons, neurosurgeons, physical therapists, radiologists, interventional radiologists and other consultants identified in the medical records of Nicholas Gilman during his March 26, 2015 admission to JHH, July 28, 2015 admission to JHH, acute care rehabilitation admissions to JHH (and every admission to JHH after March 26, 2015) were agents and/or apparent agents, servants, or employees of the Defendant, JHH. This includes, but is not limited to, Geoffrey Colby, M.D., Justin Caplan, M.D., and Scott Fenstermacher, M.D.

7. On or about March 26, 2015, Plaintiff, Nicholas Gilman, presented to JHH to undergo an elective embolization procedure for his parafalcine meningioma prior to undergoing an open surgical resection for his meningioma on March 27, 2015. The embolization procedure was performed by Defendants Colby and Caplan. The open surgical resection was to be performed by Dr. Henry Brem.

8. The embolization procedure began at approximately 10 a.m. Onyx was used as the embolization material for the procedure. Defendants Colby and Caplan approached the meningioma from the left middle meningeal artery to the superficial temporal artery and the right meningeal artery until they reached the meningioma. The procedure ended at approximately 1:05 p.m.

9. When Mr. Gilman awoke from the procedure, he was unable to speak, not following commands, and had limited spontaneous movement of his upper and lower extremities. The Defendants at JHH ordered and MRI and a CT scan because they believed he had suffered a stroke. The CT scan showed hyperdense material in the left frontal lobe (presumably left middle cerebral

artery) distant from the embolized tumor site. The MRI showed lack of flow within the cortical branch of the middle cerebral artery entering the left precentral sulcus. Both films showed the obstruction was due to the onyx or embolization material. This should not occur with proper technique and monitoring.

10. Five days later, Mr. Gilman was discharged from Johns Hopkins and sent to acute rehabilitation for physical therapy, occupational therapy, and speech therapy. Upon his discharge, he was awake and able to move all extremities but his speech and cognition was still compromised. The open craniotomy was postponed for a later date.

11. Mr. Gilman returned on July 28, 2015 for his open craniotomy to resect the meningioma with Dr. Brem. Pre-operatively, he still has severe difficulty with speech and cognition although his strength had improved with rehabilitation. The procedure was complete by approximately 7 pm. Post-operatively, Mr. Gilman expectedly had difficulty with physical tasks (ambulation, mobility, transfers, etc.) and began physical therapy at JHH on August 3, 2015.

12. Mr. Gilman was scheduled to be transferred to acute rehabilitation later that week. He was transferred to a facility outside of Northern Virginia where he never physically recovered from the substandard physical therapy.

13. Currently, Mr. Gilman is severely aphasic, has difficulty with cognition and word finding, and cannot hold a proper conversation. He is also wheelchair bound and unable to perform any activities of daily living independently. Prior to his embolization procedure in March 2015, he was a successful aviation trial lawyer in Washington D.C., a pilot, practiced Tai-Chi three times a week, walked extensively for exercise in his neighborhood, and was in excellent health.

14. All of his injuries and damages as described above are the result of the negligence of the above-named Defendants.

15. The Defendants, Geoffrey Colby, M.D., Justin Caplan, M.D., and the Johns Hopkins Hospital, were negligent and careless in the following respects:

   a. failed to properly perform the embolization procedure;

   b. failed to prevent reflux of the embolization material to the left side of Mr. Gilman's brain;

   c. improperly embolized the left middle cerebral artery;

   d. failed to prevent his stroke and extreme aphasia and cognitive issues; and

   e. was otherwise negligent and careless.

16. As a direct result of the negligence of Geoffrey Colby, M.D., Justin Caplan, M.D., and JHH, the Plaintiff, Nicholas Gilman, was caused to suffer painful and permanent injuries to his body; was caused to sustain severe mental anguish and emotional pain and suffering, was caused to incur hospital and medical expenses; future medical expenses; past and future lost wages; and was caused to incur other financial losses and damage.

**WHEREFORE**, the Plaintiff, Nicholas Gilman, claims damages in an amount exceeding thirty thousand dollars ($30,000), with all costs to be paid by the above-named Defendants.

## COUNT II
## (DEBORAH GILMAN- MEDICAL NEGLIGENCE)

17. Plaintiff, Deborah Gilman, adopts and incorporates by reference Paragraphs 1-16 above.

18. At all relevant times set forth in this Complaint, Nicholas Gilman and Deborah Gilman were husband and wife.

19. As a direct result of the negligence of Geoffrey Colby, M.D., Justin Caplan, M.D., and JHH, the Plaintiff, Deborah Gilman, was caused to suffer injury to his marital relationship,

and was caused to incur hospital and medical expenses; future medical expenses; past and future lost wages; and was caused to incur other financial losses and damage.

**WHEREFORE**, the Plaintiff, Deborah Gilman, claims damages in an amount exceeding thirty thousand dollars ($30,000), with all costs to be paid by the above-named Defendants.

Respectfully Submitted,

ARFAA Law Group

_____
Julia R. Arfaa, Esquire
2002 Clipper Park Rd
Suite 300
Baltimore, MD 21211
(410) 889-1850

***Attorneys for Plaintiff***